UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Arturo Bahena Escobar,

Petitioner,

v.

Eric H. Holder (Attorney General);
Janet Napolitano (Secretary of
Homeland Security); John Morton
(Assistant Secretary for Immigration
and Customs Enforcement); and David
J. Venturella (Acting Director, Office of
Detention and Removal Operations);

Respondents.

Civ. No. 09-3717 (PAM/JJK)

**REPORT AND RECOMMENDATION**

Arturo Bahena Escobar, Reg. #08396-041 F-Unit, Federal Correctional Institution, Sandstone, MN, 55072, *pro se*.

Gregory G. Booker, Esq., and Mary J. Madigan, Esq., Assistant United States Attorneys, counsel for Respondents.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before this Court on Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") (Doc. No. 1, Pet.). Petitioner requests that this Court: (1) order Immigration and Customs Enforcement ("ICE") to retract a 1995 deportation order entered against Petitioner until ICE holds a hearing to determine whether he can be deported; (2) grant Petitioner's Motion for Discovery Pursuant to Federal Rules of Civil

Procedure 26(a) and order ICE to provide this Court with copies of fingerprints and other identifying information to determine whether Petitioner is the individual ICE believes him to be; or (3) if ICE does not provide the information requested in Petitioner's discovery motion, this Court order ICE to retract the 1995 deportation order for failure to provide sufficient proof of deportability under *Woodby v. Immigration and Naturalization Serv.*, 385 U.S. 276 (1966). This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation to the District Court. *See* 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that the Petition be denied and this action be dismissed.

## BACKGROUND

Petitioner, Arturo Bahena Escobar, is a natural citizen of Mexico. (Doc. No. 6, Administrative R. ("A.R.") 22.) On May 25, 1999, United States District Judge David S. Doty sentenced Petitioner to 320 months imprisonment based on Petitioner's guilty plea to a charge of conspiracy to distribute and possess with intent to distribute methamphetamine under 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). (A.R. 27-28.) Petitioner is currently in the custody of the Bureau of Prisons ("BOP"), and he is serving his sentence at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). (Pet. 5.) Petitioner is projected to be released on September 10, 2021. (A.R. 34.)

In December 1994, an individual with the name Arturo Bahena-Escobar was apprehended by agents of ICE's predecessor, the Immigration and

2

Naturalization Service ("INS"), in Grand Forks, North Dakota, for fifth-degree assault and disorderly conduct. (A.R. 13.) After receiving an order to show cause and a notice of hearing from INS regarding the charge that he was deportable, this individual failed to appear at a deportation hearing. (A.R. 7-13, 6.) As a result, on August 25, 1995, an immigration judge ordered this individual to be deported from the United States to Mexico. (A.R. 6.) The parties dispute whether this individual, who is the subject of the 1995 deportation order, is Petitioner or a different person with the same name or who is using the same name as Petitioner.

In early May 1998, INS officials apparently apprehended Petitioner in Bloomington, Minnesota, for an immigration violation. (A.R. 14-18). Later that month, an immigration judge ordered that Petitioner be removed from the United States and returned to Mexico. (A.R. 21.) On May 28, 1998, an INS official observed Petitioner walk across the United States-Mexico border.[1] (A.R. 20.)

Petitioner asserts that he was arrested on June 16, 1998, and held in federal custody. (Pet. 6.) On June 22, 1998, Immigration and Naturalization Service ("INS") Special Agent Steven Nusbaum notified the United States Marshal Service that INS had initiated an investigation to determine whether Petitioner was a person subject to removal from the United States. (A.R. 35.) INS also requested that the Marshal Service notify INS at least thirty days prior

---

[1] Petitioner asserts that he has never been deported. (Pet., Attach. 2 at 8, Letter from Pet'r to ICE Headquarters (May 5, 2006).)

3

to Petitioner's release or in the event of Petitioner's death or transfer to another jurisdiction. (*Id.*) INS provided this notice and made this request using the "detainer" process.[2] (*See id.*)

On June 24, 1999, after Petitioner was sentenced for the methamphetamine charges, but prior to his incarceration in FCI-Sandstone, Petitioner was serving a portion of his sentence in the Federal Correctional Institution in Lompoc, California ("FCI-Lompoc"). (A.R. 34.) FCI-Lompoc officials acknowledged receipt of the immigration detainer and notified INS that Petitioner had a release date of September 10, 2021. (*Id.*) And FCI-Lompoc indicated it would notify INS approximately sixty days prior to Petitioner's actual release because an immigration detainer had been filed against him charging deportation. (*Id.*)

Petitioner now asserts that INS and ICE have wrongfully issued a deportation detainer against him. He claims that the 1995 deportation order described above involves a different individual using his name, that he has never been deported, and that the case of mistaken identity regarding the 1995 deportation order has wrongfully caused a detainer to appear in his immigration

---

[2] "A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). The immigration detainer used here indicates that it "is for notification purposes only and does not limit [BOP's] discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive." (A.R. 35.)

4

records.  (Pet. 5.)  And he claims that he has repeatedly asked for and been denied a hearing in which to challenge the allegations that he was the individual ordered deported in August 1995.  (*Id.*)

## DISCUSSION

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and. . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Thus, if a prisoner seeking a writ of habeas corpus prisoner "is not challenging the validity of his conviction or the length of his detention, . . . then a writ of habeas corpus is not the proper remedy," and "the district court lacks the power or subject matter jurisdiction to issue a writ."  *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996).

Here, Petitioner asserts that the remedy he seeks through the Petition is a determination by this Court that he is constitutionally entitled to a hearing at the completion of his sentence.  (Doc. No. 8, Objection to Defs.' Return to Order to Show Cause ("Pet'r's Reply") 3.)  Alternatively, he asks this Court to grant his discovery motion, or determine that the immigration authorities have failed to

5

make a sufficient showing that he is deportable.  The Petition raises no issue regarding the validity of his conviction or the length of his detention.  Likewise, his discovery motion has nothing to do with the legality of his custody and does not attempt to secure his release from allegedly illegal custody.  Nor would granting the discovery motion and reviewing any produced information be relevant to the validity of his conviction or the length of his detention.  Therefore, the Petition and Petitioner's discovery motion should be denied.

"The filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS for purposes of a petitioner for a writ of habeas corpus."  *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988).  Petitioner contends, however, that the immigration authorities' mistaken belief that he is the individual who such authorities deported in 1995 places him in their technical custody, thus entitling Petitioner to raise issues regarding the detainer in habeas.  (*See* Pet'r's Reply 4 (arguing that "once the [1995] Deportation Order in question was lodged against the [Petitioner], it placed him in Executive Detention (regardless of the Plaintiff's concurrent penal detention").)  However, the Eighth Circuit rejected the notion that the presence of an immigration detainer places an alien prisoner in the custody of the immigration authorities.  *Campillo*, 853 F.2d at 595 ("We do not believe that the filing of a detainer with prison officials amounts to the taking into custody, technical or otherwise, of the petitioner.").  Accordingly, Petitioner's technical-custody contention does not support granting the writ of habeas corpus.

6

Petitioner nevertheless attempts to distinguish his case from *Campillo* on the ground that he is challenging a deportation order (Pet'r's Reply 3), whereas in *Campillo*, "there [was] no existing deportation order, nor [was] there a threat that such an order will be issued without the opportunity for a full and fair hearing prior to deportation." *See Campillo*, 853 F.2d at 596. However, Petitioner misreads *Campillo*. There, the Eighth Circuit compared Mr. Campillo's situation to other cases in which immigration authorities had already instituted removal proceedings against allegedly deportable aliens and issued deportation orders against them to secure their removal from the United States. *See id.* at 596 (discussing *Chung Young Chew v. Boyd*, 309 F.2d 857, 865 (9th Cir. 1962), and *Slavik v. Miller*, 89 F. Supp. 575, 576 (W.D.Pa. 1950)). The court merely acknowledged that other courts found that the entry of a final order of deportation for an incarcerated alien places him or her in the "technical custody" of the INS, and the court clearly rejected adopting such a rule. *Id.* Further, it did not hold that the presence of a prior deportation order in an individual's immigration record entitles an inmate to a hearing prior to the imposition of a detainer. Moreover, ICE has not begun removal proceedings against Petitioner and it has not issued any final order of deportation, thus making Petitioner's case distinguishable from the two authorities cited in *Campillo* on which Petitioner apparently relies.

Petitioner may fear that ICE will deport him at the end of his incarceration without holding a hearing because the immigration authorities have confused him

7

with a different person who was deported in 1995.³ Although it is not at all clear that this is the nature of Petitioner's current challenge, such a dispute is not ripe because ICE has not yet attempted to remove him. *See* 8 U.S.C. § 1252(b)(9) (providing for judicial review of any action taken to remove an alien only after the issuance of a final order); *cf. Belasco v. Snyder*, No. 99-3334, 2000 WL 227990, at *1 (8th Cir. Feb. 15, 2000) (per curiam) (rejecting a habeas petitioner's argument regarding authority to deport him as an aggravated felon because a final order of removal had not yet been issued). Thus, an issue the Petition raises—whether ICE may deport a person without holding a hearing (*see* Pet. 4)—does not present a justiciable controversy at this time.⁴

---

³ If this Court construed the Petition to be a request that Petitioner be given an immediate hearing regarding the propriety of the immigration detainer placed on Petitioner, this Court would recommend that the Petition be denied. "The filing of an INS detainer, standing alone, does not cause a sentenced offender to come within the custody of the INS for purposes of a petition for a writ of habeas corpus," *Campillo*, 853 F.2d at 595, and "[i]f the prisoner is not in the custody of the party against whom relief is sought, then a writ of habeas corpus cannot be granted." *Hernandez v. Lindemann*, No. Civ. 00-1165 (JRT/FLN), 2000 WL 34494821, at *1 (D. Minn. June 2, 2000). However, Petitioner has explicitly stated that he is not seeking such a remedy. (Pet'r's Reply 3.)

⁴ Petitioner's fear that he may be subject to removal without a hearing based on the presence of the prior deportation order may be premised on 8 C.F.R. § 241.8, which provides that an alien who illegally reenters the United States after having been removed "shall be removed from the United States by reinstating the prior order" and "has no right to a hearing before an immigration judge in such circumstances." *Id.* § 241.8(a). However, to remove an individual by reinstating a prior deportation order, an immigration officer must determine the identity of the alien, and, in "disputed cases, verification of identity shall be accompanied by a comparison of fingerprints between those of the previously . . . deported . . . alien contained in the Service records and those of the subject

(Footnote Continued on Following Page)

Petitioner also appears to assert that the immigration authorities have violated his constitutional right to due process by refusing to give him a hearing prior to placing the immigration detainer against him based on the 1995 deportation order. (*See* Pet. 3.) Petitioner's cites *Wong Yang Sung v. McGrath*, 339 U.S. 33, *judgment modified by Wong Yang Sung v. McGrath*, 339 U.S. 908, (1950), in support of his contention that deportation cannot occur without a hearing. (*See* Pet. 8.) However, *McGrath's* requirement that all deportation proceedings must conform to the Administrative Procedure Act and provide a hearing was later superseded by statute. *See Hashim v. Immigration and Naturalization Serv.*, 936 F.2d 711, 713 (2d Cir. 1991) ("Congress enacted Section 242 [of the Immigration and Naturalization Act] to nullify the Court's decision [in *McGrath*]."). Moreover, Petitioner provides no support for the

---

(Footnote Continued from Previous Page)
alien." *Id.* § 241.8(a)(2). Thus, if Petitioner is correct that the 1995 deportation order applies to him only because of a case of mistaken identity, he would not be removed pursuant to reinstatement of the prior deportation order because "[i]n the absence of fingerprints in a disputed case the alien shall not be removed pursuant to this paragraph." *See id.*

This should give Petitioner little comfort, however, because he may be removed without a hearing as an aggravated felon who is not a lawful permanent resident of the United States. *See* 8 C.F.R. § 238.1(b)(2) (providing that the ICE may provide notice to an individual convicted of an aggravated felony, such as Petitioner, that it intends to issue a final removal order without a hearing before an immigration judge); 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that any alien who is convicted of an aggravated felony is deportable); 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include "illicit trafficking in a controlled substance . . . including a drug trafficking offense").

proposition that he is entitled to a hearing before immigration officials send the BOP a detainer.

Petitioner also appears to assert that he has been denied certain opportunities within the prison system because of the presence of the immigration detainer. He has attached several pieces of correspondence that he has sent to BOP and immigration officials while he has been incarcerated that explain that he is unable to get a higher paying job while in prison because of the detainer. (Pet., Attach. 2, Ex. C.) However, the BOP may properly consider an immigration detainer in determining the conditions of a prisoner's confinement. *Mohammed v. Sullivan*, 866 F.2d 258, 260 (8th Cir. 1989). Accordingly, to the extent Petitioner seeks any relief related to this issue, his Petition should be denied.

In conclusion, the Petition fails to demonstrate that Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). Accordingly, the Petition should be denied, and this action should be dismissed.

## RECOMMENDATION

Based on all the files and records herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1), be **DENIED**;

2. Petitioner's Motion for Discovery Pursuant to Federal Rules of Civil Procedure 26(a) (Doc. No. 2), be **DENIED**; and

3. This action be **DISMISSED WITH PREJUDICE**.

Date: March 9, 2010

          *s/ Jeffrey J. Keyes*
          JEFFREY J. KEYES
          United States Magistrate Judge

Under D. Minn. Loc. R 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 23, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.